UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KULE, LLC, | |
| Plaintiff, | |
| -v- | 23-CV-756-LTS |
| ALFWEAR, INC., | |
| Defendant. | |

Memorandum Order

Plaintiff Kule, LLC ("Plaintiff" or "Kule") brings this action for declaratory judgment against Defendant Alfwear, Inc. ("Alfwear" or "Defendant"), in which Kule seeks a declaration that the United States Patent and Trademark Office ("USPTO") may re-register Kule's pending trademark application, and that such trademark does not infringe upon or dilute any rights of Alfwear.  (Docket entry no. 37 ("Am. Compl.").)  Alfwear moves to dismiss the Amended Complaint, arguing that this suit is an improper anticipatory declaratory judgment action.  (Docket entry no. 38.)  Before Alfwear moved to dismiss the Amended Complaint, it initiated suit against Kule in the United States District Court for the District of Utah for federal trademark infringement and unfair competition, and common law unfair competition (the "Utah Action").  That second-filed suit, Alfwear argues, should proceed in lieu of this improper anticipatory filing.

The Court has reviewed carefully the parties' submissions in connection with the instant motion and, for the following reasons, grants Defendant's motion to dismiss without prejudice to litigation of the instant claims in the Utah Action.

BACKGROUND[1]

Founded by Nikki Kule in 2001, Kule (pronounced "kewel," as in "jewel") is a limited liability company that has its principal place of business in New York and sells various apparel items under its KULE trademark.  (Am. Compl. ¶¶ 2, 9, 15, 17, 51.)  It focuses on "classic clothes with a happy wink," and combines "American sensibility with European style" to produce a "Preppy Luxe" aesthetic.  (Id. ¶ 16.)  Alfwear is a Utah corporation that operates its principal place of business in Salt Lake City, Utah, and makes "premium performance clothing" consisting of "technical outdoor to rugged workwear to lightweight hiking pants."  (Id. ¶¶ 10, 28.)  It has used the trademarks KÜHL, KUHL, and KUUL (all pronounced "cool") in connection with its performance apparel offerings since 1994.  (Id. ¶ 2.)  Kule asserts that "[f]or over twenty years, both parties' trademarks have co-existed in the clothing market" without either party raising any issues "about infringement or potential confusion among consumers."  (Id. ¶ 4.)

In mid-2022, due to a "clerical oversight by its former counsel," Kule missed the deadline to renew its oldest trademark registration—encompassing clothing and apparel items—for the KULE mark, which had been issued by the USPTO in December 2011 based on Kule's continuous use of the mark since its founding in 2001.[2]  (Id. ¶ 5.)  That inadvertent lapse led to the USPTO's cancelling of the registration of the mark on July 8, 2022.  (Id. ¶ 4.)  Roughly a month later, on August 9, 2022, Kule filed a new application with the USPTO to re-register the

[1]     The following facts, drawn from the Complaint and its exhibits, are taken as true, and all reasonable inferences are resolved in Plaintiff's favor for the purposes of this motion. Freidus v. Barclays Bank PLC, 734 F.3d 132, 137 (2d Cir. 2013).

[2]     Kule maintains three other active KULE trademark registrations—for precious metals and goods coated therewith, leather and imitations thereof, and retail apparel stores—which are not at issue in this litigation.  (Am. Compl. ¶ 23.)

trademark to cover the same clothing and apparel items previously registered under the cancelled mark.  (Id. ¶ 37.)

Approximately two weeks thereafter, on August 24, 2022, Alfwear's counsel wrote to Kule, demanding that Kule change its brand name and abandon its pending trademark application.  (See Am. Compl. Ex. 2 (the "Notice Letter").)   In relevant part, the Notice Letter provides:

> KÜHL has recently become aware of www.kule.com and United States trademark application number 97541199 for KULE in association with clothing (25); filed on August 9, 2022. Since the mark includes the identical KUL letters pronounced COOL, our client KÜHL is concerned that any use of the mark KULE with clothing will potentially confuse the public into believing that there is a relationship with our client KÜHL. In addition, our client is concerned that any use of the mark KULE will dilute the overall KÜHL brand. KÜHL would also like to notify your organization of our multiple successful trademark oppositions (see PTAB) and federal court actions (see PACER). Please see the decision in the successful TTAB opposition 97541199 against KULE application number 88739925.
>
> KÜHL respects trademark rights in all marketing materials and routinely makes efforts to avoid using names of existing brands. KÜHL further recognizes the difficulty in identifying existing trademarks and that your organization's use of KULE is likely not malicious or intended to capitalize on KÜHL's reputation, goodwill and/or customer loyalty. However, in order to protect KÜHL's trademark rights, we request that you change the name of your company and abandon US trademark application number 975411991 by clicking on this LINK or following this address https://teas.uspto.gov/rea. Please mail a copy of the electronic abandonment receipt to the email address below. If the application is not abandoned, KÜHL will oppose registration and pursue all possible legal action to protect its customers. KÜHL hopes that by notifying your organization at this stage, lost marketing expenses toward the use of KULE can be minimized.
>
> We request that you reply to this letter stating the Applicant's intent in this matter **within 10 days**. Please feel free to contact me or have your legal representative contact me directly with any questions. We hope to resolve this matter efficiently and amicably.

(Notice Letter at 2.)  As Kule acknowledges in its Amended Complaint, the Notice Letter "highlighted Alfwear's commitment to take legal action, citing its previous 'federal court actions,' and promising that '[i]f the application is not abandoned,'" that Alfwear will oppose registration and "*pursue all possible legal action*."  (Am. Compl. ¶ 44 (emphasis in original).)

Kule also claims that "Alfwear has been a plaintiff in approximately 10 federal trademark infringement cases, primarily in the United States District Court for the District of Utah," and has separately also "initiated numerous proceedings USPTO's Trademark and Trial and Appeal Board ("TTAB") regarding its KÜHL Marks."  (Id. ¶ 45.)

The very next day, on August 25, 2022, Kule filed a petition to the Director of the USPTO, requesting reinstatement of the cancelled KULE mark.  (Id. ¶ 38.)  The Director denied the petition on October 18, 2022, and suggested that Kule file a new application through a process called "Request to Make Special."[3]  (Id. ¶ 39.)  Kule filed a new application on October 19, 2022, and on October 22, filed a request that its application be made "special," which the USPTO granted on November 16.  (Id. ¶ 41.)  On November 17, the USPTO approved the pending application "for publication for opposition."  (Id. ¶ 42.)

Meanwhile, Kule did not respond to Alfwear's August 24 Notice Letter until November 7, 2022, by a letter in which Kule's counsel asserted, inter alia, that the pending trademark application was not substantively new, and that the parties' marks had coexisted for decades, demonstrating an absence of customer confusion.  (See generally Am. Compl. Ex. 4.)  Rather than reply to Kule's response letter, and following USPTO's intervening approval of Kule's pending application "for publication for opposition" on November 17, Alfwear filed its opposition with the TTAB on January 3, 2023.  (Am. Compl. ¶ 47.)

Less than a month later, on January 30, 2023, Kule filed this action "a) in response to Alfwear's opposition to Kule's application to re-register its lapsed trademark

---

[3]     As described in the Amended Complaint, under USPTO rules, "an application to register a trademark that was the subject of a previous, inadvertently cancelled registration, can be 'made special' if the trademark in the new application is identical to the trademark in the cancelled registration, and the goods/services in the new application are identical to or narrower than the goods/services in the cancelled registration."  (Am. Compl. ¶ 40.)

registration, and b) due to its justifiable and well-founded belief that Alfwear will also follow

through on its threats to 'pursue all possible legal action to protect its customers' and initiate a

federal court action for trademark infringement."  (Id. ¶ 59.)

Kule's initial complaint spanned six pages of text, and included seven requests for

declaratory relief, some of which asked the Court to cancel certain of Alfwear's KÜHL/KUUL

trademarks.  (See generally docket entry no. 8 (Compl.).)  Approximately six months later, on

June 26, 2023, Alfwear (1) moved to dismiss the initial complaint, arguing, inter alia, that the

Court lacked subject matter jurisdiction over Kule's claims because neither the Trademark Act

nor the Declaratory Judgment Act creates a right to seek approval of a pending trademark

application or cancellation of a trademark registration in a case that does not already involve a

registered mark; and (2) separately initiated the Utah Action against Kule, alleging federal

trademark infringement and unfair competition, as well as common law unfair competition.[4]

(See docket entry no. 33; see also docket entry no. 39 Ex. 3 ("Utah Complaint").)

Roughly one week later, on July 6, 2023, Kule filed, through new counsel, the

Amended Complaint, which contains 19 pages of text, and an additional 40 pages of exhibits,

and three requests for declaratory relief.  In the Amended Complaint, Kule asks the Court to

declare that the USPTO may re-register Kule's lapsed trademark because (1) no likelihood of

confusion exists between the parties' marks, (2) Alfwear's delayed challenged is barred by

laches, and (3) Alfwear acquiesced to Kule's continuous use of the mark for over twenty years.

(See generally Am. Compl.)  Alfwear filed the instant motion to dismiss on July 20, 2023, and

---

[4]     Alfwear proffers in its brief that the parties first began negotiations after Kule refused to
comply with the Notice Letter, during which period Alfwear filed its opposition with the
TTAB, and that further settlement negotiations occurred following Kule's filing of its
initial complaint.  After such efforts proved unfruitful, Kule moved to dismiss and filed
the Utah Action.  (Docket entry no. 33 at 8.)

argues that this suit ought to be dismissed because it is an improper anticipatory declaratory judgment action.  (See generally docket entry no. 39 ("Def. MoL").)  In the alternative, Alfwear requests that this action be transferred to the District of Utah or stayed pending resolution of that action.  (Id. at 11.)

DISCUSSION

The "first-filed rule" generally requires that, where there are two competing lawsuits, the "first suit should have priority."  Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc., 522 F.3d 271, 275 (2d Cir. 2008) (quoting First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989)).  While the rule imposes a "general presumption" that a first-filed suit has priority, the presumption is not "applied in a rigid or mechanical way."  Dornoch Ltd. v. PBM Holdings, Inc., 666 F.Supp.2d 366, 369 (S.D.N.Y. 2009) (internal quotation marks omitted).  Instead, the Second Circuit has recognized limited exceptions "where 'special circumstances' warrant giving priority to the second suit."  Emp'rs Ins. of Wausau, 522 F.3d at 275.  "Special circumstances," though "rare," include when a "first-filed lawsuit is an improper anticipatory declaratory judgment action."  Id. at 275–76.

Under the Declaratory Judgment Act, courts are empowered to "declare the rights and other legal relations of any interested party seeking such [a] declaration" in "a case of actual controversy."  28 U.S.C. § 2201(a).  However, the "federal declaratory judgment is not a prize to the winner of a race to the courthouses."  Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 219 (2d Cir. 1978), abrogated on other grounds by Pirone v. MacMillan, Inc., 894 F.2d 579, 586 (2d Cir. 1990).  Accordingly, courts may consider "equitable, prudential, and policy arguments" in determining whether to entertain a declaratory action, MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 136 (2007), "particularly when there is a pending proceeding in another court, state or

federal, that will resolve the controversies between the parties." Great Am. Ins. Co. v. Houston Gen. Ins. Co., 735 F. Supp. 581, 584 (S.D.N.Y. 1990); see also Cephalon, Inc. v. Travelers Companies, Inc., 935 F. Supp. 2d 609, 613 (S.D.N.Y. 2013).  It is left to the discretion of the district court to decide whether to hear declaratory relief claims.  Wilton v. Seven Falls Co., 515 U.S. 277, 289–90 (1995).

In this Circuit, an action is deemed improperly anticipatory when it is "filed in response to a direct threat of litigation that gives specific warnings as to deadlines and subsequent legal action." Emp'rs Ins. of Wausau, 522 F.3d at 276.  Courts have considered a variety of circumstances in determining whether an action was preceded by a "specific, direct threat of litigation."  Facts that have been found material to such a determination include, but are not limited to, "a notice letter [that] informs a defendant of the intention to file suit, a filing date, and/or a specific forum for the filing of the suit," J. Lyons & Co. v. Republic of Tea, 892 F. Supp. 486, 491 (S.D.N.Y. 1995), the time between the notice letter and the declaratory judgment complaint, Dish Network, L.L.C. v. Am. Broad. Companies, Inc., No. 12-CV-4155-LTS-KNF, 2012 WL 2719161, at *4 (S.D.N.Y. July 9, 2012), and the brevity of the initial complaint (relative to the complex nature of the relief sought), Skiplagged, Inc. v. Sw. Airlines Co., No. 21-CV-5749-JPC, 2022 WL 2391999, at *4 (S.D.N.Y. June 30, 2022).  As these illustrations make clear, rebutting the "first-filed presumption is [a] highly fact dependent" inquiry.  Oleg Cassini, Inc. v. Serta, Inc., No. 11-CV-8751-PAE, 2012 WL 844284, at *4 (S.D.N.Y. Mar. 13, 2012) (citation omitted).  Accordingly, when weighing the relevant facts, courts should not seek to apply a bright-line rule but instead "consider[] the totality of the events." BuddyUSA, Inc. v. Recording Indus. Ass'n of Am., 21 F. App'x 52, 56 (2d Cir. 2001).

Applying this test, the Court concludes that the circumstances here more closely

resemble those in cases where courts have found an improper anticipatory filing.  The facts

suggest that Alfwear's August 24, 2022, Notice Letter delivered a specific, "direct threat of

litigation."  Emp'rs Ins. of Wausau, 522 F.3d at 276.  Kule argues that the Notice Letter did not

contain any of the three indicia of impending litigation—no clear intention to file suit, no

proposed date for such filing, and no specific forum in which to file.  (Docket entry no. 40 ("Pl.

Opp.") at 8.)  Instead, Kule asserts, the Notice Letter ought to be characterized as an invitation to

commence negotiations.  (Id. at 8-10.)  As Alfwear points out, however, Kule's argument is

undercut by its own allegations, which uniformly paint an entirely different picture—one in

which Kule understood Alfwear's threat of litigation to be genuine.  (Def. MoL at 2.)  Kule

alleges that the Notice Letter "highlighted Alfwear's commitment to take legal action, citing its

previous 'federal court actions,' and promising that '[i]f the application is not abandoned," that

Alfwear will oppose registration and "*pursue all possible legal action*."  (Am. Compl. ¶ 44

(emphasis in original).)  And in no uncertain terms, Kule claims that it initiated *this* action "a) in

response to Alfwear's opposition to Kule's application to re-register its lapsed trademark

registration, and b) due to its *justifiable and well-founded belief that Alfwear will also follow*

*through on its threats to 'pursue all possible legal action to protect its customers' and initiate a*

*federal court action for trademark infringement*."  (Am. Compl. ¶ 59 (emphasis added).)

       Kule's response is to sidestep the plain meaning of its own pleadings by claiming

that such language was intended to demonstrate the existence of an "actual controversy" for

purposes of seeking relief under the Declaratory Judgment Act.  (Pl. Opp. at 13.)  That

explanation is unpersuasive, and courts routinely view such admissions as indicating an improper

anticipatory motivation behind the action.  See, e.g., Skiplagged, 2022 WL 2391999, at *4

("Skiplagged explicitly recognized in its Complaint that this case arose from Southwest's threat

to sue Skiplagged."); <u>Cephalon, Inc.</u>, 935 F. Supp. 2d 609, 613–15 (S.D.N.Y. 2013) ("Travelers'

clear statement of its 'intention to file suit' and Cephalon's admission that it acted on that threat

are sufficient to render Cephalon's action improperly anticipatory."); <u>Crosman Corp. v. Heckler

& Koch, Inc.</u>, No. 08-CV-6034-CJS, 2008 WL 4347528, at *5 (W.D.N.Y. Sept. 17, 2008)

("Plaintiff obviously understood Defendant's threats of litigation as such, since it claims that it

commenced this action 'to vindicate its rights in the face of [Defendant's] threats of injunctive

relief, damages, and impoundment.'").

> Kule next attempts to distinguish much of the case law on the grounds that Kule,
unlike the typical plaintiff who swiftly files an improper anticipatory action in a "race to the
courthouse," waited over five months after receiving the Notice Letter to file the instant action.
(Pl. Opp. at 9.)  During that time, Kule and Alfwear engaged in what appear to have been sincere
although ultimately unsuccessful attempts to settle the dispute.  (<u>Id.</u> at 9; <u>see also</u> Def. MoL at 3.)
But the period between receipt of a notice letter and the filing of an action is simply one factor
among many that the Court must consider in assessing whether the lawsuit is improperly
anticipatory.  Indeed, where the initial threat of litigation is clear—and understood to be so—it
would hardly serve the purposes of the "special circumstances" exception to the first-to-file rule
to penalize the "natural plaintiff"—the party who claims their *existing* rights are being violated—
for "waiting several months [to file suit] while the parties engaged in settlement talks."  <u>Jaccard
Corp. v. This LLC</u>, No. 15-CV-6248, 2016 WL 9460720, at *4 (W.D.N.Y. Apr. 28, 2016); <u>see
also</u> <u>Ontel Prod., Inc. v. Project Strategies Corp.</u>, 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995)
("Where a party is prepared to pursue a lawsuit, but first desires to attempt settlement
discussions, that party should not be deprived of the first-filed rule's benefit simply because its
adversary used the resulting delay in filing to proceed with the mirror image of the anticipated

suit. Otherwise, potential plaintiffs would be discouraged from first attempting to resolve their claims without resorting to litigation.")  Considered alongside Alfwear's Notice Letter and Kule's corresponding admissions, the latter's "delay" in filing the instant action, far from dispelling an improper anticipatory motive, suggests that Kule simply beat Alfwear to the punch after realizing the parties' settlement talks would not bear fruit.

Finally, Alfwear contends—while Kule does not address, let alone dispute in its opposing papers—that the "brevity of and deficiencies" in the original seven-page complaint are further evidence of Kule's improper anticipatory intent.  (Docket entry no. 49 at 4.)  The Court agrees.  That complaint, among other things, contains only cursory description of the parties' dispute, fails to mention that Kule received the Notice Letter (commencing its narrative timeline instead at Alfwear's opposition filing before the TTAB months later), and requests that the Court outright cancel certain of Alfwear's existing trademark registrations without so much as explaining their scope or history.  (See generally Compl.)  "[T]he length [and] content of [Kule's initial] complaint are indicative of hasty preparation."  Dish Network, L.L.C., 2012 WL 2719161, at *4.  Kule did not amend its complaint until nearly *six* months later and did so through new counsel after Alfwear moved to dismiss and initiated the Utah Action.  (See Am. Compl.)  The Court is persuaded that these facts "support [Alfwear's] contention that [Kule's] complaint was a "place-holder" suit, filed in anticipation of coercive litigation and designed principally to secure [Kule's] preferred forum over any other forum selected by the natural plaintiff[.]"  Dish Network, L.L.C., 2012 WL 2719161, at *4; see also Laxman v. Shapiro, 06-CV-11408-DLC, 2006 WL 3423807, at *2 (S.D.N.Y. Nov. 29, 2006) (finding that brevity of complaint and "numerous technical deficiencies and factual omissions" support inference of anticipatory filing).

The Court concludes that this action is an improper anticipatory suit for declaratory relief, and therefore declines to exercise its jurisdiction to hear Kule's claims. Wilton v. Seven Falls Co., 515 U.S. 277, 289–90 (1995). The Court need not, and does not, address the parties' remaining arguments concerning the first-to-file rule.

CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Amended Complaint is granted, without prejudice to litigation of the instant claims in the already-pending action in the United States District Court for the District of Utah. This Memorandum Order resolves docket entry no. 38. The Clerk of Court is respectfully directed to enter judgment dismissing the Amended Complaint and close this case.


        SO ORDERED.

Dated: New York, New York
        December 26, 2023


                                        /s/ Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                        Chief United States District Judge